UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT SMALL,                    )
                                 )
        Plaintiff                )
                                 )
v.                               )   No. 2:14-cv-42-NT
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social Security, )
                                 )
        Defendant                )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing past relevant work as a kitchen helper or stock clerk. The plaintiff seeks remand on the basis that the administrative law judge erroneously judged his right upper extremity impairment nonsevere, rejecting the only expert opinion of record bearing on the impairment, that of treating physician James Katz, M.D., and failing to factor resulting limitations into his determination of the plaintiff's residual functional capacity ("RFC"). *See* Plaintiff's Itemized Statement of Errors

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

("Statement of Errors") (ECF No. 14) at 4-15.[2] I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, Finding 1, Record at 15; that he had severe impairments of affective disorder/mood disorder NOS [not otherwise specified] and substance addiction disorder/alcohol dependence-abuse, in remission as of March 2012, Finding 3, *id*. at 16; that, if he stopped substance use, he would have retained the RFC to perform a full range of work at all exertional levels and could understand, remember, and carry out semi-complex instruction, use judgment in making semi-complex work-related decisions, respond appropriately to co-workers, supervisors, and usual work situations not involving the public, and adapt to occasional changes in the ordinary work setting, Finding 7, *id*. at 21; that, if he stopped substance use, he would be able to perform past relevant work as a kitchen helper or stock clerk, which did

---

[2] On December 1, 2014, I granted, without objection, a motion by the plaintiff to file a reply brief. *See* ECF No. 21. I warned that leave to file that brief should not be taken by the parties as precedent-setting, noting that Local Rule 16.3(a)(2)(B) not only did not contemplate a reply memorandum but also explicitly stated that, after the filing of the commissioner's opposition, "no further briefing will be permitted." *Id*. In his reply brief, the plaintiff added a new point of error: that the administrative law judge erred in finding his substance use material to his disability. *See* Plaintiff's Reply Memorandum ("Reply") (ECF No. 22) at 8-9. At oral argument, counsel for the commissioner clarified that, while the commissioner had not objected to the filing of the reply brief, she had not contemplated that the plaintiff would use it in part as a platform to raise a new argument. She contended that the plaintiff had waived the new point by failing to raise it in his statement of errors. *See, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). She added that, because Local Rule 16.3(a)(2)(B) expressly states that no reply brief will be allowed, it is especially important, in the unusual case in which a reply brief might be permitted, not to countenance the raising of a new issue therein. The plaintiff's counsel countered that the commissioner had had sufficient time to reflect on the new issue raised in the reply brief to be prepared to respond to it at oral argument, but, for the reasons articulated by counsel for the commissioner and the well-settled principle in this district that a reply memorandum is limited to issues raised in the opposing memorandum, *see*, Local Rule 7(c)(reply memorandum "shall be strictly confined to replying to new matter raised in the objection or opposing memorandum."), I find that the new point is waived and do not address it.

not require the performance of work-related activities precluded by his RFC, Finding 8, *id*. at 25; and that his substance use disorder was a contributing factor material to the determination of disability because he would not be disabled if he stopped substance use and, as a result, he had not been disabled at any time from his alleged onset date of disability, November 1, 2007, through the date of the decision, August 13, 2013, Finding 9, *id*. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do

no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff alleged that he had several physical impairments, *see* Record at 17-18, including a right hand/arm impairment stemming from an incident in September 2010 in which he was slashed with a knife, cutting his ulnar nerve, *see id.* at 87. He testified at his January 5, 2012, hearing that, as a result of that injury, he had "lost . . . a lot of [his] motor skills with . . . [his] right hand[,]" and because he was right-handed, it was "very difficult for [him] to write." *Id.* He stated that he was unable to straighten one of the fingers of that hand, had no feeling "on the pinky side all the way up," and had some pain in the elbow where he had been cut. *Id.* at 87-88. He testified that the residuals of his injury would prevent him from performing past jobs as a fry cook, a kitchen manager, a cashier, and a stock clerk. *See id.* at 88-89. With respect to the kitchen manager job, he testified that he would be severely limited because he had done the ordering and inventory through a computer and his hand would slow him down because he could not use a computer with all of his fingers. *See id.* at 88.

The administrative law judge deemed none of the plaintiff's physical impairments severe. *See id.* at 17. With respect to the right hand/arm injury, he noted that hospital records verified that the plaintiff had sustained a laceration to his right arm, with injury to the ulnar nerve, in September

2010, and that the nerve injury was surgically repaired by Thomas Vaughan, M.D., of Plastic & Hand Surgical Associates. *See id*. He observed that, when Dr. Vaughan last examined the plaintiff in January 2011, he reported that the plaintiff's elbow range of motion was "entirely normal" and that, while he still had some "numbness along the tip of the fifth digit," his strength and range of motion continued to improve. *Id*. (citations and internal quotation marks omitted).

He rejected the plaintiff's testimony concerning his purported right arm and hand difficulties, stating:

> [R]ecords in 2012 and 2013 show these purported manipulative problems do not prevent the [plaintiff] from hand rolling his own cigarettes, or from using a video game controller, since he spends a great deal of time playing Nintendo. He is also able to use a razor, because he appears at appointments cleanly shaven.
>
> Also significant as to professed arm difficulties, the [plaintiff] has reported no issues with nor demonstrated any manipulative problems in the right upper extremity to any medical provider in the past 2 and a half years. Furthermore, records show, and the [plaintiff] verified by testimony[,] that he engaged in work activities 'under the table' during this period that included manual labor such as digging ditches, painting and shoveling snow; actions which require greater bilateral arm and hand capacity than the [plaintiff] asserts. Therefore, since clinical data fails to corroborate that the [plaintiff] has chronic pain or dysfunction in the right hand or arm as lasting more than 12 months, the assertion of an upper extremity impairment is not severe.

*Id*. (citations and internal quotation marks omitted).

He noted that he had considered, but also rejected, a March 5, 2011, opinion of Dr. Katz, the plaintiff's former treating internist, assessing, *inter alia*, restrictions in lifting, carrying, reaching, handling, fingering, feeling, and pushing or pulling with the right upper extremities as a result of chronic right wrist/elbow pain from an ulnar nerve injury secondary to trauma. *See id*. at 17, 1012-15. He explained that "Dr. Katz'[s] assessment [was] not borne out by corroborative physical findings from Dr. Vaughan," who had performed the ulnar nerve repair, and, "at [the

plaintiff's] last visit in February 2011, Dr. Katz failed to report the [plaintiff] with any physical problem of the right upper extremity whatsoever." *Id*. at 17 (citations omitted).

The administrative law judge noted that, in concluding that the plaintiff's physical impairments were nonsevere, he had relied on opinions of agency nonexamining consultants Donald Trumbull, M.D., and Lawrence Johnson, M.D., as well as a report of agency examining consultants Ian Buchan, P.A., and A.C. Bean, M.D. *See id*. at 18. He stated, "Although the State consultants did not have access to all medical data regarding the [plaintiff's] arm injury, as stated above, there is no subsequent objective evidence reflective of a severe physical impediment lasting more than 12 months that imposes stringent limitations to the [plaintiff's] work capacity." *Id*.

In the context of determining the plaintiff's RFC, he noted that "statements he has made to providers raise serious questions as to his veracity and the impetus behind his application for disability." *Id*. at 22. These included the following May 14, 2012, notation by mental health treatment provider Peter Kang, D.O., whom the plaintiff had asked to fill out a shelter request form:

> [The plaintiff] reported he owes a lot of money at this time and he did not feel he was able to go to work without losing everything he has now. We discussed that . . . if he were to work, down the line, he can make much more money after paying everyone off – IRS, fines, child support, MA, etc. [The plaintiff] reported he wants to work, but he does not want to work for nothing in return[.]

*Id*. at 22-23 (citation and internal quotation marks omitted).

The plaintiff argues that the finding that his right arm/hand impairment was nonsevere is unsupported by substantial evidence because the administrative law judge failed to supply the requisite good reason(s) for rejecting the opinion of Dr. Katz, a treating source, and none of the agency opinions on which he relied is relevant because all of them predated his ulnar nerve injury. *See* Statement of Errors at 4-11; Reply at 1-7; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (an

6

administrative law judge must "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion"). He contends that, in view of the seriousness of the injury at issue – the transection of the ulnar nerve – the administrative law judge was unqualified to make a lay judgment, based on the raw medical evidence, that the impairment was nonsevere. *See* Reply at 2-3, 6-7.

The plaintiff correctly observes that the opinions of Drs. Trumbull and Johnson, as well as that of Buchan/Dr. Bean, predate his ulnar nerve injury. *See* Reply at 1; Record at 653-57, 658-65, 769-76. It follows that those opinions cannot stand as substantial evidence that his right hand/arm impairment was nonsevere. Nonetheless, the plaintiff falls short of demonstrating that the administrative law judge improperly rejected the Katz opinion or erred in deeming his right arm/hand impairment nonsevere.[3]

## A. Handling of Katz Opinion

The plaintiff faults the rejection of the Katz opinion on the basis that the administrative law judge overlooked evidence corroborating it, including portions of Dr. Vaughan's January 25, 2011, treatment note and a January 20, 2011, note of emergency room physician Nathan Mick, M.D., who treated him for right hand pain after he fell onto his outstretched right hand on the ice. *See* Statement of Errors at 4-7, 9; Record at 830-31.

The plaintiff told Dr. Mick that, in addition to pain from the fall, he had "some numbness in his right fourth and fifth fingers that [was] not new[,]" and he had sustained "an ulnar nerve injury from a stabbing a while ago[.]" *Id*. at 830. On examination of the plaintiff's right hand, Dr. Mick noted, in relevant part, that "[h]e does have numbness throughout the fourth and fifth digits

---

[3] The administrative law judge erred in stating that the agency consultants "did not have access to all medical data regarding the [plaintiff's] arm injury[.]" Record at 18. In fact, they had access to none of that data. However, nothing turns on the error.

7

and a little bit of [the] third digit due to his known ulnar nerve injury and he has got limited use of his hand due to this reason[,]" with "some atrophy of the thenar eminence noted." *Id*.

Five days later, the plaintiff reported to Dr. Vaughan that he felt that "things [were] coming along fairly well[,]" he still had "numbness along the tip of the fifth digit, but he [did] feel that slowly his strength and range of motion [were] improving[,]" and he suffered a fall the prior week and was seen at the emergency room, where x-rays showed no evidence of fracture or dislocation. *Id*. at 911. Dr. Vaughan noted on examination:

> Range of motion of the elbow is entirely normal. He still has some flattening and atrophy of the first dorsal compartment. He has trace intact adductor digit minimi. He has trace of the adductor pollicis. His clawing is improved in his second through fifth digits. He has about 5 degrees of clawing of the index and slightly greater at the third, fourth, and fifth but certainly much better than previously. . . .
>
> At this point clearly [the plaintiff] is still intact. He does have some weakness of the ulnar-innervated intrinsics, but this is certainly improving.

*Id*.

The plaintiff posits that these records corroborate the Katz findings, demonstrating that he continued to have deficits, including clawing, numbness, atrophy, and some weakness, that would impose the kind of limitations that Dr. Katz assessed. *See* Statement of Errors at 5-6.

While the administrative law judge did not mention the Mick note or all of Dr. Vaughan's findings, he acknowledged that the plaintiff had some ongoing deficits in the wake of the injury and surgery. *See* Record at 17. However, he also correctly noted that Dr. Vaughan's note indicated that the plaintiff's condition was improving, *see id*. at 17, 911, and that the plaintiff did not report, and Dr. Katz did not note, any issue with his right arm/hand during a February 16, 2011, office visit (approximately one month after the last visit to Dr. Vaughan and a few weeks before the

8

completion of the Katz opinion), *see id*. at 17, 916.[4] This was an adequate basis on which to reject the Katz opinion, even taking into account, as the plaintiff points out, *see* Reply at 6, that Dr. Katz was copied on Dr. Vaughan's records, *see* Record at 911-15.[5]

It is true that, having rejected the Katz opinion, the administrative law judge essentially made his own layperson's judgment that the right arm/hand impairment was nonsevere and did not meet the so-called duration requirement. However, for the reasons that follow, I find no error in those determinations.

### B.  Duration Requirement

As a threshold matter, the administrative law judge supportably found that the plaintiff did not meet his burden of demonstrating that his right arm/hand impairment had lasted, or was expected to last, for a continuous period of at least 12 months. *See id*. at 18; *see also, e.g*., 20 C.F.R. §§ 404.1509, 416.909 ("Unless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. [The commissioner] calls this the duration requirement."). It is the claimant's burden to demonstrate,

---

[4] Dr. Katz did note on December 10, 2010, that the plaintiff reported that he had undergone surgery following an injury to his ulnar nerve, was starting physical therapy, and had "numbness in his 4th and 5th, digits, understandably, from his injury." Record at 919. As the commissioner notes, however, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 19) at 4, Dr. Katz merely noted on examination that the plaintiff had "a well-healed incision, surgical scar to the right elbow" and "fair strength in his right hand[,]" Record at 919.

[5] The plaintiff further argues that, if the administrative law judge was unclear as to the bases for Dr. Katz's assessed functional restrictions, he should have made a reasonable effort to recontact Dr. Katz or have otherwise developed and clarified the issue, *see* Statement of Errors at 9-10, and, even if he properly did not accord the Katz opinion controlling weight, he erred in failing to accord it deference rather than outright rejecting it, *see id*. at 10-11. As the commissioner notes, *see* Opposition at 10-11, the duty to recontact a treating source arises only if an adjudicator cannot ascertain the basis for the opinion from the case record, *see, e.g*., Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2014) at 127. The administrative law judge did not indicate that he was unclear as to the bases for the Katz opinion but, rather, that it was unsupported. *See* Record at 17. Thus, no duty to recontact Dr. Katz arose. As the commissioner further notes, *see* Opposition at 9, the plaintiff makes no effort to explain why, in accordance with relevant factors listed at 20 C.F.R. §§ 404.1527(c) and 416.927(c), Dr. Katz's opinion should have been accorded some degree of deference.

at Step 2, that he or she has a severe medically determinable impairment that meets the duration requirement. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *see also, e.g., Stephenson v. Colvin*, No. CV 13-8303-AGR, 2014 WL 4162380, at *2 (C.D. Cal. Aug. 20, 2014).

As the administrative law judge found, the plaintiff last received treatment for his right arm/hand impairment from Dr. Vaughan on January 25, 2011, approximately four months after his injury, and there is no indication that he sought further treatment for the condition after that date. *See* Record at 17. Indeed, the administrative law judge correctly observed that Dr. Katz's progress note of February 16, 2011, is devoid of any mention of issues with the plaintiff's right upper extremity. *See id.* at 17, 916.

In his reply brief, *see* Reply at 5, the plaintiff identified, as evidence that his right arm/hand condition met the duration requirement, an April 2012 progress note stating, "[W]ould like to find another job but not of [sic] the food industry, especially since he had his uln[a]r nerve damaged on his right hand[,]" Record at 1125, and a December 2011 progress note stating, "[A] year ago he was in [a] confrontation and he was sliced on his elbow and lost all their [sic] nerve use[,]" *id.* at 1130. However, as counsel for the commissioner observed at oral argument, the plaintiff made both comments to a mental health professional, Peter Kang, D.O. *See id.* at 1125-31. Thus, they were not made in the context of seeking treatment for the arm/hand, and Dr. Kang's notes understandably reflect no examination of, or treatment for, the plaintiff's right upper extremity. *See id.* The plaintiff cites no authority for the proposition that his subjective complaints, standing alone, suffice to satisfy the duration requirement.

At oral argument, the plaintiff's counsel raised two further points seemingly bearing on the duration requirement. He cited *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000), for the proposition that, once a condition has been determined to exist, it is presumed to continue unless medical

10

evidence indicates otherwise, and he contended that his client sought no further treatment for the simple reason that, following his surgery, there was no further treatment for his ongoing arm/hand problems.

In *Loza,* the United States Court of Appeals for the Fifth Circuit observed, "[O]nce evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged." *Loza*, 219 F.3d at 395-96 (citations and internal quotation marks omitted). However, *Loza* is materially distinguishable in that there, no issue was raised as to whether the claimant's impairments met the duration requirement. *See id*. at 394, 396.

While it is conceivable, as the plaintiff's counsel contended, that his client sought no further treatment because none was available, it is not self-evident. The plaintiff's counsel pointed to no evidence of record corroborating the proposition that, despite continuing functional limitations, his client had reached a treatment end-point.

In sum, the administrative law judge supportably found that the plaintiff failed to meet his burden of demonstrating that his right arm/hand impairment met the duration requirement. This, alone, was dispositive of the right arm/hand impairment at Step 2.[6]

### C. Severity

Beyond this, I find no fault with the administrative law judge's determination that the right arm/hand impairment was nonsevere.

---

[6] The plaintiff also faulted the administrative law judge for failing to consider a closed period of disability. *See* Reply at 8. This point is waived, both because it was raised for the first time in his reply brief, *see, e.g., Farrin*, 2006 WL 549376, at *5, and because it was unaccompanied by any effort at developed argumentation, *see, e.g.*, *Graham v. United States,* 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted).

The plaintiff argues that the administrative law judge erred as a matter of law in reaching that conclusion absent reliance on any expert opinion. *See* Reply at 3, 6-7 (citing *Ormon v. Astrue*, 497 Fed. Appx. 81, 86-87 (1st Cir. 2012); *Nguyen v. Chater*, 172 F.3d 31, 34 (1st Cir. 1999); *Manso-Pizarro*, 76 F.3d at 16; *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990); *Staples v. Astrue*, Civil No. 09-440-P-S, 2010 WL 2680527, at *3-*4 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010)). However, as counsel for the commissioner observed at oral argument, the cited caselaw is distinguishable in that it pertains to the assessment at Step 4 of a claimant's RFC. *See Ormon*, 496 Fed. Appx. at 84, 86-87; *Nguyen*, 172 F.3d at 34-35; *Manso-Pizarro*, 76 F.3d at 17; *Gordils*, 921 F.2d at 329; *Staples*, 2010 WL 2680527, at *3-*4. Beyond this, the administrative law judge identified substantial evidence in support of his determination that the impairment was nonsevere, observing that:

1. The plaintiff had not sought treatment for the impairment since January 2011, at which point his condition was noted to have been improving. *See* Record at 17. An administrative law judge may draw a negative inference as to the credibility of a claimant's allegations from a failure to seek treatment, provided that he or she takes into consideration "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2014) ("SSR 96-7p"), at 140. As noted above, while the plaintiff's counsel argued that his client did not seek treatment because he had reached a medical endpoint, he pointed to nothing in the record corroborating that assertion.

2. The plaintiff had engaged in a host of activities reflective of greater arm and hand capacity than alleged, including hand rolling his own cigarettes, using a video game controller,

seemingly using a razor, given that he was clean-shaven, and engaging in manual labor that included digging ditches, painting, and shoveling snow. *See* Record at 17. The plaintiff protests that the administrative law judge failed to determine which video games he played and how much hand use they entailed, whether he actually rolled cigarettes by hand (*versus*, for example, using a machine or having others roll them for him), and how often he shaved and in what manner. *See* Reply at 5-6. At oral argument, his counsel added that the administrative law judge likewise had failed to make a detailed inquiry as to his hand use in his work activities. Nonetheless, as counsel for the commissioner rejoined, the administrative law judge drew a reasonable inference that the plaintiff's activities, including his performance of three jobs requiring heavy use of the upper extremities, were inconsistent with a finding of more than minimal work-related functional limitations.

3. The plaintiff had made statements that undercut the credibility of his allegations that he could not work, most notably his statement to Dr. Kang that he did not want to work because he owed a lot of money. *See* Record at 22-23. The plaintiff protests, *see* Reply at 5, that the administrative law judge selectively combed the record to cast doubt on his credibility, failing to mention contrary evidence, for example, (i) "Disability form completed for patient[,]" Record at 1085, (ii) "[W]as working for his AA Sponsor, but has stopped because 'I couldn't take it[,]'" *id*. at 1103, (iii) "Temporary disability form completed and given to patient[,]" *id*. at 1104, (iv) "[W]ould like to find another job but not of [sic] the food industry, especially since he had his uln[a]r nerve damaged on his right hand[,]" *id*. at 1125, and (v) "[A] year ago he was in [a] confrontation and he was sliced on his elbow and lost all their [sic] nerve use[,]" *id*. at 1130.

However, as counsel for the commissioner rejoined at oral argument, these citations do not undermine the administrative law judge's credibility finding, particularly with respect to the

13

plaintiff's arm/hand impairment. While there are two references to the completion of disability forms, the plaintiff does not describe, or provide a citation to, the content of those forms, and they were completed by a mental health provider, Emily Siege, M.D. *See id.* at 1085, 1104. Dr. Siege's notation regarding the plaintiff's comment that he could not take working for his AA sponsor indicates that the plaintiff ascribed the problem to his wariness of intimacy. *See id*. at 1103. As noted above, the two comments made to Dr. Kang were not made in the context of seeking treatment for the arm/hand, and Dr. Kang's notes understandably reflect no examination of, or treatment for, the plaintiff's right upper extremity. *See id*. at 1125-31. In any event, the fact that the plaintiff stated to some treatment providers that he could not work because of his impairments did not undercut the administrative law judge's reliance on statements made to others that he did not want to work for other reasons.

For all of these reasons, the plaintiff falls short of demonstrating entitlement to reversal of the commissioner's decision and remand of this case.[7]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum,*

---

[7] Because I find no error, I do not reach the question of whether any error was harmless. *See* Statement of Errors at 11-15; Opposition at 12; Reply at 7-8.

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 25th day of January, 2015.

                                              <u>/s/ John H. Rich III</u>
                                              John H. Rich III
                                              United States Magistrate Judge